**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **OSCAR TIZIE BOHI,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **MO:25-CV-00085-DC-RCG** |
| | § | |
| **PFIF, LLC d/b/a PLANET FITNESS;** | § | |
| **LEEROY SOTO; CITY OF MIDLAND;** | § | |
| **OFFICER NORTON, in his individual** | § | |
| **and official capacity; OFFICER** | § | |
| **TERRELL, in his individual and official** | § | |
| **capacity;** | § | |
| *Defendants.* | § | |

<u>**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**</u>

BEFORE THE COURT is Defendants City of Midland, Officer Norton, and Officer Terrell's (collectively, "Midland Defendants") Rule 12(b)(1) and 12(b)(6) Motion to Dismiss. (Doc. 46).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the case law, the Court **RECOMMENDS** that Midland Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 46).

## I.  BACKGROUND

On February 24, 2025, Plaintiff Oscar Tizie Bohi ("Plaintiff"), proceeding *pro se*, filed his Complaint against Defendants PFIP, LLC d/b/a Planet Fitness; Leeroy Soto ("Defendant Soto"); and the City of Midland. (Doc. 1). Following a multitude of service of process issues, on September 29, 2025, Plaintiff filed a Motion for Leave to File an Amended Complaint (Doc. 35), which the Court granted (Doc. 36). Plaintiff's Amended Complaint added two Defendants—

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

Officers Norton and Terrell ("Defendant Officers") employed by the Midland Police Department. (Doc. 37).

The relevant factual allegations are as follows. Plaintiff, who resides in Ohio, was a Planet Fitness Black Card member, entitling him access to any Planet Fitness gym. (Doc. 37 at 4). On October 1, 2022, Plaintiff went to Midland's Planet Fitness location and had an encounter with the facility's assistant manager, Defendant Soto. *Id*. Defendant Soto apparently told Plaintiff that their system said he was not up to date on his membership payments. *Id*. Plaintiff alleges he showed Defendant Soto his bank statement, which confirmed Planet Fitness had withdrawn the membership fee, so Defendant Soto allowed Plaintiff to continue working out without incident. *Id*. To confirm Plaintiff's membership was active, Plaintiff also contacted his home Planet Fitness location, and the staff confirmed his membership was fully paid and in good standing. *Id*.

The next day, Plaintiff returned to Midland's Planet Fitness location, and Defendant Soto "falsely reported Plaintiff as a trespasser after contacting the Midland police." *Id*. Defendant Officers responded and arrested Plaintiff inside the gym. *Id*. Plaintiff alleges he informed Defendant Officers that he had shown proof of payment to Defendant Soto the day before confirming his membership was valid, but they failed to investigate this information. *Id*. Plaintiff was charged with criminal trespass and "booked for three days at Midland Police Department." *Id*. at 5. At some point during Plaintiff's interaction with Defendant Officers, Plaintiff received a criminal trespass warning, where Defendant Officer Norton stated that "[b]usiness no longer wants him on premises due to him not paying."[2] (Doc. 37-1 at 5). Plaintiff's charge was

---

2. "When considering a motion to dismiss under Rule 12(b)(6), the Court's review is limited to the complaint; any documents attached to the complaint; any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint; and matters subject to judicial notice under Federal Rule of Evidence 201." *Doe v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 653 F. Supp. 3d 359, 370 (S.D. Tex. 2023) (citing *Allen v. Vertafore, Inc.*,

dismissed in October 2024. (Doc. 37 at 5). But Plaintiff alleges, "after the dismissal, the City of Midland created and/or maintained a law-enforcement record indicating Plaintiff was involved in 'Burglary/Breaking and Entering,' despite no arrest, charge, or conviction for such offense." *Id*.

Plaintiff's Amended Complaint brings two causes of action against Midland Defendants: (1) false arrest/unlawful seizure in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 and (2) intentional infliction of emotional distress ("IIED") under Texas law. *Id*. at 7, 12. Plaintiff then brings three independent claims against the City of Midland: (1) creating and/or maintaining a false government record that stigmatized Plaintiff in violation of the Fourteenth Amendment under 42 U.S.C. § 1983; (2) denial of access to courts and suppression of evidence in violation of the Fourteenth Amendment under 42 U.S.C. § 1983; and (3) a *Monell* claim for municipal liability under 42 U.S.C. § 1983.[3] *Id*. at 11–12.

On November 7, 2025, Midland Defendants filed a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 46). On November 18, 2025, Plaintiff filed both a Response in Opposition (Doc. 50) and a Memorandum in Support of his Response (Doc. 52).[4] Midland Defendants did not file a reply. Accordingly, the instant matter is fully briefed and ripe for disposition.

---

28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022)). Because Plaintiff attaches the criminal trespass warning to his Amended Complaint, the Court will consider it.

3. In Plaintiff's Response to the instant Motion to Dismiss, he has a section titled, "Additional Valid Claims." (Doc. 52 at 4). To the extent Plaintiff is attempting bring claims against Midland Defendants that differ from what he pleads in his Complaint, the Court will not consider or address them. *Willis v. Amifast*, No. 23-CV-1408, 2024 WL 1543232, at \*5 (W.D. Tex. Apr. 9, 2024) ("[A] plaintiff cannot raise new allegations and claims in response to a motion to dismiss.").

4. Given Plaintiff's *pro se* status and because his two briefs do not exceed the page limitation when combined, the Court will consider them together. (Docs. 50, 52).

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for "lack of subject-matter jurisdiction." Under Rule 12(b)(1), "[l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. Furthermore, when a Rule 12(b)(1) motion is accompanied by the filing of another Rule 12 motion, the former should be considered before addressing attacks on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

### B.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. LLC v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

5

### III.   DISCUSSION

**A. Section 1983 Claims Against the City of Midland**

In his Amended Complaint, Plaintiff brings four claims against the City of Midland under § 1983: (1) municipal liability, (2) false arrest, (3) stigma-plus/false government record, and (4) denial of access to courts and suppression of evidence. (Doc. 37 at 7–14).

"Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *Albright v. Oliver*, 510 U.S. 266 (1994)). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). For municipal liability to attach to the City of Midland, the unconstitutional conduct must be "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). A municipality may be held liable only "where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Monell*, 436 U.S. at 690). Thus, when bringing such a § 1983 claim, the plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009), and show that the municipality made "a deliberate choice to follow a course of action . . . from among various alternatives by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotations and alterations omitted). This is because "the Court 'intended to distinguish acts of the *municipality*

from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 533 (W.D. Tex. 2017) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

To hold a municipal entity, such as the City of Midland, liable for constitutional violations committed by its municipal officers, Plaintiff must prove three elements: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (quoting *Hicks-Fields*, 860 F.3d at 808). Plaintiff may satisfy the first element by demonstrating the existence of an official policy "through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority" or by showing the existence of a "persistent, widespread practice." *Sanchez*, 283 F. Supp. 3d at 533–34 (quoting *Valle v. City of Houston.*, 613 F.3d 536, 541–42 (5th Cir. 2010); *Piotrowski*, 237 F.3d at 579). Additionally, alleging a policy by showing there was a widespread practice "requires the plaintiff to allege facts demonstrating a 'pattern of abuses that transcends the error made in a single case.'" *Bright v. City of Killeen*, No. 20-CV-431, 2021 WL 1226560, at *3 (W.D. Tex. Mar. 31, 2021) (quoting *Piotrowski*, 237 F.3d at 582). "That is, Plaintiff cannot satisfy the *Twombly* or *Iqbal* pleading standards on [his] official policy-or-custom allegation if the only facts [he] alleges with specificity relate to the events that gave rise to this action." *Ayon v. Austin Indep. Sch. Dist.*, No. 19-CV-586, 2020 WL 1536383, at *4 (W.D. Tex. Mar. 31, 2020) (citing *Ratliff v. Aransas County*, 614 F.3d 161, 169 (5th Cir. 2010)).

As to the second element, "[a] policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority"

7

over the subject matter of the offending policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Further, the municipality or official with policymaking authority must have had "[a]ctual or constructive knowledge of such [policy or] custom." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). "[W]hether an official had final policymaking authority is a question of state law." *Pembaur*, 475 U.S. at 483. Under Texas law, the final policymaker of a city is the city council. *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016). Thus, the question for courts is whether the plaintiff pleaded sufficient facts to show that the city council promulgated or ratified the alleged unconstitutional policy. *Id*.

Third, "a plaintiff must allege 'moving force causation,'" which requires the plaintiff to show "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Sanchez*, 283 F. Supp. 3d at 534 (quoting *Valle*, 613 F.3d at 542). The degree of culpability required is "deliberate indifference," which "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).

In his Complaint, Plaintiff brings a *Monell* claim for municipal liability and, separately, brings various claims for constitutional violations against the City of Midland. (Doc. 37). But the two go hand-in-hand. To state a claim against the City of Midland, Plaintiff must demonstrate that the municipality is liable for the constitutional violations using the *Monell* principles. *Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury that the government as an entity is responsible under § 1983.").
Accordingly, because Plaintiff does not sufficiently allege that an official policy promulgated by the municipal policymaker of the City of Midland was the moving force behind each of the constitutional violations he asserts, Plaintiff cannot state a claim for relief against the City of Midland.

To generally establish municipal liability against the City of Midland, Plaintiff alleges only conclusory allegations that cannot form the basis for relief. (Doc. 37 at 12–13). Plaintiff generally states "Defendant City of Midland, through its policymakers and supervisors, maintained policies, customs, and practices that were the moving force behind the violation of Plaintiff's constitutional rights." *Id.* at 13. In attempting to state an official policy or custom, Plaintiff alleges the City of Midland "maintained a custom, usage, or practice of allowing officers to act as agents for private businesses, enforcing private bans and removals without verifying legal justification." *Id*. Plaintiff's allegations are entirely conclusory and make no mention of a specific municipal policy or policymaker that is capable of supporting his *Monell* claim. *Peña*, 879 F.3d at 622 ("To proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." (internal quotations omitted)). Further, Plaintiff is unable to rely solely on the incident that caused his injury here in demonstrating a custom or practice. *Id*.

Plaintiff also alleges theories of failure to train and failure to supervise, which he asserts caused his injuries. (Doc. 37 at 13). A municipality may be held liable for failure to train or supervise under limited circumstances. *Snyder*, 142 F.3d at 795 (citing *City of Canton*, 489 U.S. 378). However, "[a] municipality's culpability for a deprivation of rights is at its most

tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985)). To avoid dismissal of a failure to train claim, Plaintiff must plead sufficient facts to show: "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010); *Goodman*, 571 F.3d at 395 (listing similar elements to state a failure to supervise claim). Further, "because the standard for municipal fault is a stringent one, a pattern of similar constitutional violations by untrained employees is ordinarily required to show deliberate indifference." *Peña*, 879 F.3d at 623 (quoting *Connick*, 563 U.S. at 62) (cleaned up). "To establish deliberate indifference, 'a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.'" *Id*. (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir.2003) (internal quotation omitted)). While there is a single-incident exception, the Fifth Circuit has stated a plaintiff cannot avail himself of the exception unless he alleges the government actor was provided "no training whatsoever." *Hutcheson v. Dallas County*, 994 F.3d 477, 483 (5th Cir. 2021).

Here, Plaintiff alleges the City of Midland failed to adequately train officers on (1) handling trespass calls involving private businesses, (2) determining probable cause before removing individuals from property, and (3) respecting Fourth and Fourteenth Amendment protections during citizen-police encounters. (Doc. 37 at 13). Further, Plaintiff contends the City of Midland "failed to supervise, investigate, or discipline officers who unlawfully assisted private entities in removing patrons, thereby encouraging misconduct." *Id*. The Complaint then makes the conclusory allegation that these failures constituted deliberate indifference. *Id*. These

allegations are far from sufficient to state a claim against the City of Midland, as Plaintiff fails to provide any specific facts regarding the training procedures or how the municipality was deliberately indifferent in adopting such procedures.

Finally, Plaintiff brought constitutional claims, apart from his *Monell* claim, against the City of Midland, including (1) false arrest in violation of the Fourth and Fourteenth Amendments, (2) creating and/or maintaining a false government record that stigmatized Plaintiff in violation of the Fourteenth Amendment, and (3) denial of access to courts and suppression of evidence in violation of the Fourteenth Amendment. (Doc. 37 at 7). However, as stated above, for Plaintiff to bring a § 1983 suit for a constitutional violation against the City of Midland, he must plead municipal liability. Because Plaintiff fails to plead an official policy or custom promulgated by an identified policymaker that was carried out with deliberate indifference, he cannot prevail on his constitutional violation claims against the City of Midland.

Accordingly, the Court **RECOMMENDS** Midland Defendants' Motion to Dismiss as to Plaintiff's claims under 42 U.S.C. § 1983 for (1) false arrest or unlawful seizure in violation of the Fourth and Fourteenth Amendments; (2) creating and/or maintaining a false government record that stigmatized Plaintiff in violation of the Fourteenth Amendment; (3) denial of access to courts and suppression of evidence in violation of the Fourteenth Amendment; and (4) municipal liability against the City of Midland be **GRANTED** and these claims be **DISMISSED WITHOUT PREJUDICE**. (Doc. 46).

## B.  False Arrest Claim Against Defendant Officers

Plaintiff asserts one cause of action for false arrest or unlawful seizure in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against Defendant Officers. (Doc. 37 at 7). "To state a claim under § 1983, a plaintiff must allege the violation of a right

11

secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendant Officers move to dismiss this claim and raise the affirmative defense of qualified immunity. (Doc. 46 at 14–17). "The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). Because qualified immunity is an immunity from suit, these questions must be resolved at the earliest possible stage in litigation. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). "[A] plaintiff asserting constitutional claims against an officer claiming [qualified immunity] must survive the motion to dismiss without *any* discovery." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022).

To overcome the defense of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). To determine whether a right was clearly established, the Court looks to cases decided before the time of the violation. *Grishman v. Valenciano*, 93 F.4th 903, 908 (5th Cir. 2024). "Because qualified immunity protects officers who 'reasonably but mistakenly' violate a plaintiff's constitutional rights, the deputies are entitled to qualified immunity if a reasonable person in their position 'would have believed that [their] conduct conformed to the constitutional standard in light of the information available to [them] and the clearly established law.'" *Freeman*, 483 F.3d at 415 (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning

12

that the conduct then at issue violated constitutional rights." *Id*. at 909. Because a plaintiff's § 1983 claim must overcome both prongs of qualified immunity, district courts have the discretion to analyze the two prongs in either order and can grant qualified immunity by addressing one or both steps. *Pearson*, 555 U.S. at 236.

### 1. Constitutional Violation

Plaintiff alleges Defendant Officers violated the Fourth and Fourteenth Amendments by detaining and arresting Plaintiff without probable cause. (Doc. 37 at 7). "The Fourth and Fourteenth Amendments guard against arrest without probable cause." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988). "A false–arrest claim requires a showing of no probable cause." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018). "A warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment." *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. The police officer's knowledge must establish that there was a fair probability that a crime occurred." *United States v. Nunez-Sanchez*, 478 F.3d 663, 666–67 (5th Cir. 2007). "Thus, as applied to a warrantless arrest, officers are entitled to qualified immunity unless there was not probable cause for the arrest and a reasonable officer in their position could not have concluded that there was probable cause for the arrest." *Cooper v. City of La Porte Police Dep't*, 608 F. App'x 195, 199 (5th Cir. 2015).

Defendant Officers argue the alleged facts show they acted reasonably and had probable cause to believe Plaintiff committed or was committing the offense of criminal trespass in violation of Texas Penal Code § 30.05. (Doc. 46 at 15). This statute provides:

> (a) A person commits an offense if the person enters or remains on or in property of another, including . . . a building . . . without effective consent and the person: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so.

TEX. PENAL CODE § 30.05(a). Therefore, criminal trespass occurs where "(1) a person (2) without effective consent (3) enters or remains on the property or in a building of another (4) knowingly or intentionally or recklessly (5) when he had notice that entry was forbidden or received notice to depart but failed to do so." *Adelman v. Branch*, 784 F. App'x 261, 266 (5th Cir. 2019) (quoting *Pena v. Bexar County*, 726 F. Supp. 2d 675, 692 (W.D. Tex. 2010)). In the statute, "notice" is defined to include "oral or written communication by the owner or someone with apparent authority to act for the owner." TEX. PENAL CODE § 30.05(b)(2)(A).

Here, based on Plaintiff's allegations, it is plausible Defendant Officers did not reasonably believe they had probable cause as to each element. *Adelman*, 784 F. App'x at 266 (assessing whether the officer had probable cause as to each element); *Bodzin v. City of Dallas*, 768 F.2d 722, 724 (5th Cir. 1985). The underlying problem with Defendant Officers' probable cause argument is there is nothing in Plaintiff's Complaint to suggest Defendant Officers could believe Plaintiff had notice he was forbidden to enter or that he was given notice to leave Planet Fitness but refused to. *Cf. Holman v. Fairchild*, 564 F. Supp. 3d 531, 546 (S.D. Tex. 2021) (holding there was probable cause to arrest the plaintiff who was unauthorized to be on the premises *and* received notice from an officer to leave); *Defrates v. Podany*, 789 F. App'x 427, 432 (5th Cir. 2019) (holding the officer had probable cause to arrest for criminal trespass even though he did not personally tell the plaintiff to leave because a third party had informed the

officer he had asked the plaintiff to leave); *Skinner v. Gragg*, No. 14-01412, 2015 WL 12966224, at *6 (S.D. Tex. Aug. 13, 2015) (analyzing whether there was a fact issue with the plaintiffs receiving notice to leave before being arrested for criminal trespass), *aff'd*, 650 F. App'x 214 (5th Cir. 2016); *Chalmers v. City of Dallas*, No. 22-CV-585, 2022 WL 17039086, at *5 (N.D. Tex. Nov. 16, 2022) (concluding the officer had probable cause to believe the plaintiff had committed the offense of criminal trespass because the plaintiff's complaint indicated he refused to leave the restaurant after the owner ordered him to do so), *R. & R. adopted*, 2022 WL 17069571 (N.D. Tex. Nov. 17, 2022).

Plaintiff's Complaint does not make such an allegation about the element of notice. Instead, Plaintiff states he went to Planet Fitness on October 1, 2022, where he had a conversation with Defendant Soto about his membership payments but was ultimately able to stay without incident. (Doc. 37 at 4). Plaintiff returned the next day and Defendant Soto "falsely reported Plaintiff as a trespasser after contacting the Midland police." *Id*. Plaintiff then alleges Defendant Officers "responded and, without probable cause, arrested Plaintiff inside the gym." *Id*. Plaintiff never mentions being told he had to leave and insists he had a right to be there because he was current on his payments. *Id*. Based on the Complaint, the only facts and circumstances the Court is sure Defendant Officers were aware of before the arrest occurred was Plaintiff being reported as a "trespasser." (Doc. 37 at 4). But, standing alone, that conclusive term is insufficient to create the reasonable belief that probable cause exists as to each element of the criminal trespass statute, namely that the individual knew he was trespassing. *See Bodzin*, 768 F.2d at 725 ("When the officers arrived on the scene, the manager told them that Bodzin was on Skaggs property, had been asked to leave, and had not done so. The officers observed Bodzin on a site that the manager said was private property, and heard Bodzin refuse to leave after being

15

told that he was not welcome. Burgin and Padgett *then* had probable cause to believe that Bodzin had committed *all* the elements of criminal trespass in their presence.") (emphasis added).

There are three other pertinent facts provided by Plaintiff. First, it appears at some point during the encounter Planet Fitness told Defendant Officers that Plaintiff was "not paying." (Doc. 37-1 at 5). Second, Defendant Officer Norton issued Plaintiff a criminal trespass warning as to Planet Fitness' property on the date of the incident, commenting that "[b]usiness no longer wants him on premises due to him not paying." *Id*.  Third, Plaintiff informed Defendant Officers that he had shown proof of payment to Defendant Soto the day before and Defendant Soto confirmed his membership was valid. (Doc. 37 at 4). But, without more, the Court finds these facts cannot support a finding of probable cause.

For example, while a criminal trespass warning can suffice the notice element, it is inadequate here because the Court has no facts as to when Plaintiff received this warning— whether it was before or after he was arrested. *But see, e.g.*, *Rios v. Perez*, 777 F. Supp. 3d 727, 756 (W.D. Tex. 2025) (finding an officer's belief that he had probable cause to arrest the plaintiff was reasonable because the officer knew the plaintiff had an active criminal trespass warning for that location); *Scott v. Santos*, 700 F. Supp. 3d 548, 555 (W.D. Tex. Oct. 31, 2023) (holding the officer had probable cause to arrest the plaintiff because he was in violation of a criminal trespass warning the officer had issued him the month prior).

Further, the criminal trespass warning states only that the "[b]usiness no longer wants him on premises due to him not paying." (Doc. 37-1 at 5). Even assuming Defendant Officers had this information before making the arrest, the Court is unable to infer from this statement that Defendant Officers believed Plaintiff was aware that his entry was forbidden or had notice to leave but refused to do so. *Cf. Davidson v. AT&T Mobility, LLC*, No. 17-CV-0006, 2019 WL

16

486170, at *5–6 (N.D. Tex. Feb. 7, 2019) (holding the officer had probable cause to arrest after a manager incorrectly told the officer that a customer was "refusing to leave" because the language implied the customer had notice to depart). And despite Defendant Officers' choice of words in their Motion, namely that they "responded to a call reporting Plaintiff failing to leave a building," this language is not present anywhere in the Complaint.[5] (Doc. 46 at 15).

Finally, Defendant Officers were presented with Planet Fitness telling them Plaintiff was "not paying" but Plaintiff telling them he had shown proof of payment to Defendant Soto the day before and Defendant Soto confirmed his membership was valid. (Docs. 37 at 4; 37-1 at 5). Although the Court cannot determine the sequence of events and cannot infer Defendant Officers had this information before arresting Plaintiff, even if they did, the Court is still not convinced Defendant Officers had sufficient probable cause given these conflicting narratives that Plaintiff was on notice that his entry was forbidden. *See Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) ("As a corollary, moreover, of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause."); *Doe v. Bonath*, 705 F. Supp. 3d 690, 716 (W.D. Tex. Nov. 7, 2023) (holding the officers did not have sufficient facts to establish probable cause where a teacher told the officers to issue a trespass warning to the plaintiff but the plaintiff told the officers she was student, had a student badge, was allowed to be on campus, and was not told to leave the school).

---

5. In their Motion, Midland Defendants also state "Plaintiff concedes he was 'private[ly] ban[ned]'" from Planet Fitness. (Doc. 46 at 15). Midland Defendants pull this language from the section of Plaintiff's Complaint where he describes the alleged unconstitutional policy forming the basis of his *Monell* claim—"The City maintained a custom, usage, or practice of allowing officers to act as agents for private businesses, enforcing private bans and removals without verifying legal justification." (Doc. 37 at 13). The Court does not find Midland Defendants' statement to be a fair inference of Plaintiff's allegation, and it does not support a finding of probable cause.

17

While it is possible Plaintiff was given notice that his entry was forbidden or notice to depart, nothing in the pleading suggests this occurred. *Hughes v. Belle Station*, No. 20-CV-00905, 2021 WL 4523084, at *6 (S.D. Tex. Oct. 4, 2021) ("The Deputies argue that this series of events gave them probable cause to arrest [the plaintiff] for criminal trespassing because they knew that he had 'returned to . . . the bar parking lot after being asked . . . to leave.' Once again, however, the problem for the Deputies is that the pleadings do not indicate that Hughes returned to Belle Station property."). Because the Court has no factual allegations to support Defendant Officers having a reasonable belief that Plaintiff's entry was forbidden or he was given notice to leave, it is plausible Defendant Officers did not have probable cause to arrest Plaintiff. Thus, Plaintiff has sufficiently stated a false arrest claim in violation of his Fourth and Fourteenth Amendment rights.

### 2. Clearly Established Right

After alleging a constitutional violation, Plaintiff must show the right allegedly violated was clearly established, or in other words, that "the state of the law at the time of the incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotation marks omitted). Looking at this second prong, qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights.[6] *Cruz v. Cervantez*, 96 F.4th 806, 813 (5th Cir. 2024) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "The law is clearly established when there is controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Linicomn v. Hill*, 902 F.3d 529, 539 (5th Cir. 2018) (quotation marks omitted). "The Supreme Court 'does not

---

6. "As we have recently clarified, 'there is no standalone "objective unreasonableness" element to the Supreme Court's two-pronged test for qualified immunity.'" *Cruz v. Cervantez*, 96 F.4th 806, 813 (5th Cir. 2024) (Dennis, J., concurring) (quoting *Hicks v. LeBlanc*, 81 F.4th 497, 503 n.14 (5th Cir. 2023)).

require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).

At the time of the incident, it was clearly established that "[a] warrantless arrest violates a suspect's Fourth and Fourteenth Amendment rights if the arresting officer lacks probable cause to believe that the suspect has committed a crime." *Bodzin v. City of Dallas*, 768 F.2d 722, 724 (5th Cir. 1985); *Adelman*, 784 F. App'x at 266 ("'The right to be free from arrest without probable cause is a clearly established constitutional right' for qualified immunity purposes." (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018))). However, the Court is required to look more specifically. "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right clearly in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). "To show the law is clearly established, a party must 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) (quoting *D.C. v. Wesby*, 583 U.S. 48, 64 (2018)). Further, a court "cannot deny qualified immunity without identifying a case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment, and without explaining why the case clearly proscribed the conduct of that individual officer." *Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020).

Viewing the facts in the light most favorable to Plaintiff, the question in this case is whether it was clearly established that a Fourth and Fourteenth Amendment violation occurs when officers arrest a person for criminal trespass without that individual first receiving notice to

19

depart or notice that entry is forbidden. The Court finds this right was clearly established in *Morgan v. City of DeSoto*. 900 F.2d 811 (5th Cir. 1990)[7] (recognizing a civil rights claim under 42 U.S.C. § 1983 for a unconstitutional deprivation of Plaintiffs' liberty because of an illegal arrest). In *Morgan*, police officers arrested the plaintiffs for criminal trespass in shopping mall parking lots, which each contained signs warning that the premises were for customers only and violators would be prosecuted for trespassing. *Id*. at 813. The arresting officers argued they had probable cause because the signs provided adequate notice that entry was forbidden. *See id*. at 814–15. But the plaintiffs asserted that due to the visibility and the placement of the signs, they did not have reasonable notice. *Id*. at 815. The Fifth Circuit concluded that, based on the record, "a fact finder could find that a reasonable peace officer would necessarily believe that no probable cause existed to arrest someone on these lots without a warning and order to leave" and denied qualified immunity.[8] *Id*.

In *Morgan*, the case—and the question of qualified immunity—turned on whether the plaintiffs had sufficient notice that their entry was forbidden or they had notice to depart but failed to do so. *See id*. at 814–15. Here, the issue is the same with only a slight distinction in the facts—there are no signs involved but instead an issue of whether Plaintiff received sufficient notice from an individual at Planet Fitness or Defendant Officers. Because the Fifth Circuit in *Morgan* recognized an arrestee must have notice that their presence is unauthorized before being arrested, the Court here finds Plaintiff's constitutional right was clearly established at the time of

---

7. While Plaintiff does not cite to *Morgan*, "in a qualified immunity inquiry 'we needn't limit our analysis to the cases cited by Plaintiff[].'" *Ford v. Anderson County*, 102 F.4th 292, 309 n.8 (5th Cir. 2024) (quoting *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 338 (5th Cir. 2020)); *Elder v. Holloway*, 510 U.S. 510, 516 (1994) ("A court engaging in review of a qualified immunity judgment should . . . use its 'full knowledge of its own [and other relevant] precedents.'" (quoting *Davis v. Scherer*, 468 U.S. 183, 192 n.9 (1984))).

8. While the *Morgan* court did not specifically analyze whether this was a clearly established right, it acknowledged that "even if probable cause did not in fact exist, the law enforcement officials were entitled to qualified immunity if a reasonable officer could have believed the arrest to have been lawful, in light of clearly established law and the information the arresting officers possessed." *Morgan*, 900 F.2d at 814.

the incident. *See Holcomb v. McCraw*, 262 F. Supp. 3d 437, 451 (W.D. Tex. 2017) ("Although both this case and *Morgan* concern arrests for criminal trespass, in *Morgan* the arresting officers did not themselves tell the plaintiffs they needed to depart before arresting plaintiffs for criminal trespass." (citing *Morgan*, 900 F.2d at 812–13)). Further, given notice is an explicit element of the criminal trespass statute, the Court concludes the conduct of Defendant Officers violated a clearly established statutory right. *Wilson v. State*, 504 S.W.3d 337, 345 (Tex. Ct. App.—Beaumont 2016, pet. ref'd) ("The conduct that the criminal-trespass statute criminalizes is an individual's conduct of returning to another's property after having been notified that his entry onto the property is forbidden. . . . [T]he statute requires the State to prove that the defendant was warned by someone with the authority to do so that he could no longer enter the owner's property, a standard that is easily understood by ordinary persons." (citing TEX. PENAL CODE § 30.05 (a)(1))); *Webb v. State*, No. 01-14-00200, 2014 WL 9868627, at *2 (Tex. Ct. App.—Houst. [1st Dist.] 2014, pet. ref'd) ("Prior notice is an element of that offense." (citing TEX. PENAL CODE § 30.05 (a)(1))); *Adelman*, 784 F. App'x at 267 (using a Texas appellate court case to satisfy the clearly established prong of a qualified immunity defense). Thus, Defendant Officers should not be entitled to qualified immunity as to Plaintiff's false arrest claim.

Accordingly, the Court **RECOMMENDS** Midland Defendants' Motion to Dismiss as to Plaintiff's false arrest or unlawful seizure under 42 U.S.C. § 1983 against Defendant Officers be **DENIED**. (Doc. 46). Additionally, in Midland Defendants' Response, they request, in the event the instant Motion is not granted, that discovery be limited to the issue of qualified immunity. *Id.* at 17. The Court **RECOMMENDS** Midland Defendants' request for limited discovery be **GRANTED**. *Id.*; *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022) ("[W]here the pleadings are sufficient to overcome QI, the district court *must* deny the motion to dismiss without the

benefit of pre-dismissal discovery. . . . [Then,] the defendant can move the district court for discovery limited to the factual disputes relevant to whether QI applies, then reassert QI in a summary judgment motion.").

### C. IIED Against Midland Defendants

In his Complaint, Plaintiff, in the alternative, brings a claim under Texas law for IIED against Midland Defendants. (Doc. 37 at 12). Plaintiff alleges Midland Defendants' "extreme and outrageous conduct—including false arrest, maintaining false government records, discriminatory denial services, defamatory publications, and obstructing access to exculpatory evidence—intentionally or recklessly caused Plaintiff severe emotional distress." *Id*. In their Motion, Midland Defendants make two primary arguments as to why Plaintiff's IIED claim should be dismissed. (Doc. 46 at 18–19).

First, Midland Defendants argue Plaintiff did not notify the City of Midland of his claims within 60 days, which is a prerequisite to a suit against the City for damage or injury. *Id*. at 18. Texas Civil Practice and Remedies Code § 101.101 generally lays out this requirement:

> (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
>> (1) the damage or injury claimed;
>> (2) the time and place of the incident; and
>> (3) the incident.
>
> (b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

Then, specifically, the City of Midland's Charter provides a 60-day period to provide notice of injury:

> Before the City of Midland shall be liable for damages for accidental death, personal injuries of any kind or for injuries to or destruction of or damage to property of any kind, the claimants or

22

survivors in a death claim or the persons injured or the owner of the property so injured, damaged or destroyed, or someone in his behalf, shall give the mayor and city council notice in writing of such injury, damage or destruction, duly verified **within sixty days** after the same has been sustained, stating in such written notice when, where and how the injury, damage or destruction occur[r]ed, the apparent extent thereof, the amount of damages sustained, the amount for which the claimant will settle, the street and residence number of claimant at the time and date the claim was presented and the actual residence of such claimant for the six months immediately preceding the occurrence of such injuries, damage or destruction, and the names and addresses of the witnesses upon whom he relies to establish his claim; and a failure so to notify the mayor and city council within the time and manner provided therein shall exonerate, excuse and except the city from any liability whatsoever. (Election - 9/10/60)

City of Midland Charter, Art. III, § 8 (emphasis added).

Here, Plaintiff's IIED claim against the City of Midland arose from an incident that occurred on October 2, 2022. (Doc. 37 at 4). Based on the information before the Court, the City of Midland did not receive notice of Plaintiff's injury until it was served with process in September 2025—nearly three years later. (Doc. 34). Plaintiff does not argue otherwise or assert that the City of Midland previously had notice of his injuries. Accordingly, without timely notice, the Court lacks jurisdiction to hear Plaintiff's state law claim of IIED against the City of Midland. *Hogan v. Bexar County*, No. 19-CV-255, 2021 WL 11669921, at *4 (W.D. Tex. June 23, 2021) ("Timely notice is a jurisdictional requirement for a [Texas Tort Claims Act ("TTCA")] claim.").

As an additional reason for dismissal, Midland Defendants argue they all are immune from Plaintiff's IIED claims. (Doc. 46 at 18–19). The Court agrees. "A Texas municipality, such as the City, is immune from actions under Texas common law unless the Texas Legislature has expressly waived that city's governmental immunity." *Powell v. City of Houston*, No. H-25-1360, 2025 WL 1635501, at *7 (S.D. Tex. June 6, 2025) (citing *Univ. of Tex. Med. Branch at*

23

*Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994)). "The TTCA provides that a municipality cannot be liable for any claims 'arising out of assault, battery, false imprisonment, or any intentional tort . . . .'" *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 641 (S.D. Tex. 2001) (quoting TEX. CIV. PRAC. & REM. CODE § 101.057(2)). Because claims for intentional infliction of emotional distress are intentional torts, the City of Midland enjoys immunity from this claim. *Thomas v. State*, 294 F. Supp. 3d 576, 614–15 (N.D. Tex. 2018) (dismissing a claim for IIED against a county because it is an intentional tort which the county is immune from under the TTCA). Further, "[c]ourts recognize that the TTCA provides no waiver of immunity for intentional torts, such as intentional infliction of emotional distress, and suits against government employees are subject to dismissal under § 101.106(f)." *Alvarado v. Tex. Health & Human Servs. Comm'n*, No. 19-CV-0106, 2019 WL 6876499, at *4 (W.D. Tex. Dec. 17, 2019) ("To the extent § 101.106(f) applies when the plaintiff sues both the governmental unit and its employee, Plaintiff's IIED claim is barred by the Texas Tort Claims Act. It does not matter whether Plaintiff sues [the officer] in [his] individual or official capacity, as an IIED claim against [him] in either capacity remains subject to dismissal under § 101.106(f).") (internal quotations and citations omitted).

Accordingly, the Court **RECOMMENDS** Midland Defendants' Motion to Dismiss as to Plaintiff's IIED claim against Midland Defendants be **GRANTED** (Doc. 46) and Plaintiff's IIED claim be **DISMISSED WITH PREJUDICE**.

### D.  Punitive Damages

In his Complaint, Plaintiff seeks punitive damages against Midland Defendants for reckless and intentional misconduct. (Doc. 37 at 14). In their Motion to Dismiss, Midland

24

Defendants seek to dismiss Plaintiff's claims of entitlement to punitive damages because he fails to meet the punitive damages standard in § 1983 cases. (Doc. 46 at 20).

"Punitive damages are a particular remedial mechanism normally available in the federal courts . . . and are especially appropriate to redress the violation by a Government official of a citizen's constitutional rights." *Carlson v. Green*, 446 U.S. 14, 22 (1980) (quoting *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971)). Punitive damages may be awarded in § 1983 cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). "The decision to award or deny punitive damages is left to the finder of fact." *Id*. At this stage of the proceedings, with a violation of constitutional right claim against Defendant Officers being recommended to proceed, the Court should not judge whether Defendant Officers' conduct meets this standard. *Flores v. City of San Benito*, No. 20-CV-169, 2021 WL 4851839, at *4 (S.D. Tex. Sept. 27, 2021) (denying a motion to dismiss a claim for punitive damages when a constitutional right claim remained), *R. & R. adopted*, 2021 WL 4845783 (S.D. Tex. Oct. 18, 2021); *Beeler v. Rounsasvall*, No. 00-CV-2441, 2001 WL 332016 (N.D. Tex. Apr. 3, 2001) ("A ruling on Defendant Rounsavall and Ramsey's motion to dismiss Plaintiff's claim for punitive damages should be DEFERRED until such time as Plaintiff has adequately alleged a constitutional violation.").

But because the Court finds Plaintiff did not sufficiently state a claim against the City of Midland, Plaintiff's claim for punitive damages against the City of Midland necessarily fails. *Harmon v. City of Arlington*, 478 F. Supp. 3d 561, 578 (N.D. Tex. 2020), *aff'd*, 16 F.4th 1159

25

(5th Cir. 2021). Further, "punitive damages are not available under § 1983 from a municipality." *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985).

Accordingly, the Court **RECOMMENDS** Midland Defendants' Motion to Dismiss as to Plaintiff's claim for punitive damages against Defendant Officers be **DENIED**. (Doc. 46). Further, the Court **RECOMMENDS** Midland Defendants' Motion to Dismiss as to Plaintiff's claim for punitive damages against the City of Midland be **GRANTED**. (Doc. 46).

## IV.    RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** Midland Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 46).

The Court **RECOMMENDS** Midland Defendants' Motion to Dismiss as to Plaintiff's claims under 42 U.S.C. § 1983 for false arrest or unlawful seizure in violation of the Fourth and Fourteenth Amendments, creating and/or maintaining a false government record that stigmatized Plaintiff in violation of the Fourteenth Amendment, denial of access to courts and suppression of evidence in violation of the Fourteenth Amendment, and a *Monell* claim for municipal liability against the City of Midland be **GRANTED** and these claims be **DISMISSED WITHOUT PREJUDICE**. (Doc. 46).

Further, the Court **RECOMMENDS** Midland Defendants' Motion to Dismiss as to Plaintiff's false arrest or unlawful seizure under 42 U.S.C. § 1983 against Defendant Officers be **DENIED**. (Doc. 46). Additionally, the Court **RECOMMENDS** Midland Defendants' request for discovery to be limited to the issue of qualified immunity following the motion to dismiss stage be **GRANTED**. (Doc. 46).

Further, the Court **RECOMMENDS** Midland Defendants' Motion to Dismiss as to Plaintiff's IIED claim against Midland Defendants be **GRANTED** (Doc. 46) and Plaintiff's IIED claim be **DISMISSED WITH PREJUDICE**.

Finally, the Court **RECOMMENDS** Midland Defendants' Motion to Dismiss as to Plaintiff's claim for punitive damages against Defendant Officers be **DENIED**. (Doc. 46). But the Court **RECOMMENDS** Midland Defendants' Motion to Dismiss as to Plaintiff's claim for punitive damages against the City of Midland be **GRANTED**. (Doc. 46).

SIGNED this 19th day of March, 2026.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party *has not been served* by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).